UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL GOODING, JR.,

Plaintiff,

v. Case No. 8:26-cv-2966-TPB-AAS

SHERIFF CHAD CHRONISTER, et al.,

Defendants.
______________________________________/

**ORDER DISMISSING CASE**

Michael Gooding, Jr., a Florida state prisoner, initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983.[1] He sues Hillsborough County Sheriff Chad Chronister and medical providers for being deliberate indifferent to his serious medical needs while he was detained in the Falkenburg Road Jail. Upon review, Gooding's deliberate indifference claim must be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A.[2]

---

[1] Publicly-available records show that Gooding is incarcerated at the Sumter Correctional Institution and serves concurrent, 123.67-month sentences for trafficking in amphetamine and delivery and possession of a controlled substance. *State v. Gooding*, No. 22-CF-012587, Doc. 215 (Fla. 13th Jud. Cir.).

[2] Under 28 U.S.C. § 1915A(a), the Court must screen certain civil suits brought by prisoners to determine whether they should proceed. A court is required to dismiss a complaint (or any portion thereof) it is "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

## I. Complaint

Gooding alleges the following: In July of 2023, he was taken into custody by the Hillsborough County Sheriff and housed at the Falkenburg Road Jail. (Doc. 1 at 14) On July 12, 2023, he reported to medical staff that his foot had been injured in a motorcycle accident and that he was experiencing pain, swelling, and difficulty walking. (*Id.*) On that date, his right foot was x-rayed. (*Id.*) The x-ray showed that he suffered from "acute to sub-acute fracture/dislocation base proximal phalanx, 4th toe." (*Id.* at 14–15)

Approximately one week later, Gooding was seen by Defendant Doctor Nugaga for a follow-up to the x-ray. (*Id.* at 14) Dr. Nugaga prescribed Gooding 500 mg of Naproxen twice per day for pain and ordered him to use an Ace bandage. (*Id.*)

For the next year, Gooding continued to experience pain and swelling and reported his condition to medical providers during Chronic Care visits as well as during at least five additional visits to the medical unit. (*Id.*) At these visits, Gooding reported that he was in constant, debilitating pain and that he was unable to run, exercise, walk, or stand for a prolonged period. (*Id.*) Unnamed medical staff told Gooding that because the injury to his right foot did not occur in the jail, he was not eligible for a surgical repair. (*Id.*) Medical

---

The Court must read a plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519 (1972).

staff continued to renew Gooding's prescription for Naproxen for twelve months. (*Id.*)

In July 2024, Gooding submitted a sick-call request because of unexplainable heat and shooting pain in his right foot. (*Id.*) An unnamed medical provider ordered an x-ray, and after reviewing the radiology report, the medical provider informed Gooding that the bones in his right foot remained broken. (*Id.*) Gooding was placed in a walking boot, and he was relocated to a limited mobility housing unit. (*Id.*) He was also ordered to see an orthopedist; however, the order was denied. (*Id.*)

In May 2025, Gooding continued to experience pain, discomfort, and fatigue despite use of the walking boot and taking 500 mg of Naproxen twice daily for nearly two years. (*Id.* at 16) In May and June of 2025, Gooding received six physical therapy sessions with Defendant Physical Therapist Josh, during which Josh recommended exercises to assist with Gooding's chronic pain and limited mobility. (*Id.*) Josh also prescribed orthopedic shoes and a cane to assist Gooding with walking. (*Id.*)

In July 2025, Gooding submitted a medical grievance. (*Id.* at 17) Within days of submitting his grievance, he was denied the pain medication he had been prescribed for two years. (*Id.*)

Gooding names as defendants Inter Radiology, Dr. Nayler Imam, Nurse Practitioner Bastille, Dr. Richard Rhee, and Dr. Beverly Broome. (*Id.* at 17–

18) He sues these defendants for failing to competently interpret the x-ray film, which showed that his metatarsus was broken. (*Id.*)

He also sues Dr. Nugaga for ordering that his fractured foot be treated with an Ace bandage. (*Id.* at 18) He alleges that Dr. Nugaga ignored his serious medical condition and provided substandard care because Gooding's injury occurred outside the jail. (*Id.*)

Finally, Gooding sues Naphcare for providing him sub-standard medical care, and he sues Sheriff Chronister for having constructive knowledge of Naphcare's sub-standard medical care. (*Id.* at 19) Gooding seeks to recover compensatory and punitive damages. (*Id.* at 5)

## II. Discussion

Pretrial detainees have a right to adequate medical care under the Due Process Clause of the Fourteenth Amendment. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985). The minimum standard of medical care required by the Due Process Clause is identical to the standard for convicted persons under the Eighth Amendment. *Id.*

To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that "(1) the injured party suffered a deprivation that was objectively 'sufficiently serious,' and (2) the defendant acted with 'subjective recklessness as used in the criminal law.'" *Wingo v. WellStar Health Sys., Inc.*, 160 F.4th 1184, 1190–91 (11th Cir. 2025) (quoting *Wade v. McDade*, 106 F.4th

1251, 1262 (11th Cir. 2024) (*en banc*)). A serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019) (quotations omitted).

An official acts with deliberate indifference "if he (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citing *Farmer v. Brennan*, 511 U.S. 825, 836 40 (1994)). To demonstrate "subjective recklessness," a plaintiff must show that "the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Stalley*, 124 F.4th at 1283-84 (quoting *Wade*, 106 F.4th at 1253). This standard mirrors that of "subjective recklessness as used in the criminal law." *Wade*, 106 F.4th at 1262 (quoting *Farmer*, 511 U.S. at 839).

Relevant here, a claim for deliberate indifference is not available simply because a prisoner and the prison medical staff disagree on a diagnosis or modes of treatment. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Even if a defendant actually knew of a substantial risk to inmate health or safety, the defendant is not liable under the Eighth Amendment if he "responded reasonably to the risk." *Wade*, 106 F.4th at 1261. Medical

treatment gives rise to a claim for deliberate indifference "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020). Notably, "deliberate indifference is *not* a constitutionalized version of common-law negligence." *Swan v. Junior*, 961 F.3d 1276, 1287–88 (11th Cir. 2020).

Here, Gooding does not plead a "complete denial of readily available treatment." *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). Rather, he alleges that the medical care he received was inadequate because it should have been "plainly apparent that something was amiss causing the bones [in his foot] not to mend." (Doc. 1 at 19) He alleges that the medical providers failed to properly diagnose his broken foot and therefore did not prescribe a proper treatment plan, which prolonged his healing and caused him permanent damage. (*Id.*)

Gooding's claim that the medical care he received—two x-rays, pain medication for two years, an Ace bandage, Chronic Care visits, visits to the medical unit, physical therapy, recommended exercises, a walking boot, relocation to a limited mobility housing unit, orthopedic shoes, and a cane—was inadequate must be dismissed. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and

to constitutionalize claims which sound in tort law." *Hoffer*, 973 F.3d at 1272. A mere difference in a medical opinion between a medical provider and an inmate as to the inmate's diagnosis or course of treatment does not establish deliberate indifference. *Harris,* 941 F.2d at 1505. Whether medical providers should have employed "additional diagnostic techniques or forms of treatment" is a "classic example of a matter for medical judgment," and therefore is not an appropriate basis for liability under the Eighth Amendment. *See Estelle*, 429 U.S. at 107.

Gooding's own allegations, accepted as true, show that medical providers did not recklessly disregard his serious medical condition. Rather, for two years, medical providers responded reasonably to his condition with continuous, repeated, and timely medical care. Gooding may believe that he should have received additional or different medical treatment, but his mere disagreement with the medical care he did receive does not permit the reasonable inference that his treatment constituted deliberate indifference. *See Hoffer*, 973 F.3d at 1273. The Court cannot "second guess [the] medical judgment[]" of a medical provider. *Id.* at 1272. And, "the Eighth Amendment doesn't require [medical care] to be 'perfect, the best obtainable, or even very good.'" *Id.* at 1271 (quoting *Harris*, 941 F.2d at 1510).

## III. Conclusion

Because amendment would be futile, Gooding's Complaint is **DISMISSED WITH PREJUDICE** for failure to state a claim for deliberate indifference to a serious medical need. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not . . . allow an amendment . . . where amendment would be futile."). The Clerk is directed to enter a judgment of dismissal, **TERMINATE** any pending motions, and to **CLOSE** this case.

DONE and ORDERED in Chambers in Tampa, Florida, this 10th day of November, 2026.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**